**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-02550-RM-MJW

NARELLE A. CRIST,

    Plaintiff,

v.

DORR TO DOOR PIZZA, LLC, d/b/a DOUBLE D'S SOURDOUGH PIZZA

    Defendant.

___

**ORDER**
___

Ms. Narelle Crist ("Plaintiff") brings this action against her former employer, Dorr to Door Pizza, LLC ("Defendant") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, alleging that she was discriminatorily demoted and fired because she was pregnant. Before this Court is Defendant's Motion for Summary Judgment. (ECF No. 23.) For the reasons stated below, Defendant's motion is GRANTED.

**I. LEGAL STANDARD**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569-70 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "Under Rule 56(c), the moving party[] *always* bears the initial responsibility of informing the district court of the basis for its motion . . . ." *Reed v. Bennet*, 312 F.3d 1190, 1994 (10th Cir. 2002) (quoting *Celotex Corp.*, 477 U.S. at 322). However, the moving party "can satisfy that burden with respect to an issue on which it does not bear the burden of persuasion at trial simply by indicating to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial. *See id.* A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

If a movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in her complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact") (citation omitted).

Only admissible evidence may be considered when ruling on a motion for summary judgment. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). Affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995). "[C]onclusory and self-serving affidavits are not sufficient." *Id*. (citation omitted). The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence. Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3). "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation, alterations and citation omitted). The Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for him." *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000). Further, Local Rule 7.1(e) provides that "[e]very citation in a motion, response or reply shall include the specific page or statutory subsection to which reference is made." D.C. Colo. L. Civ. R. 7.1(e).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts as recited below are based on adequate citations to the record that would be admissible at trial. The facts are recited in a light most favorable to the non-moving party.

Plaintiff worked at Double D's Sour Dough Pizza ("Double D's"), a chain of pizza restaurants owned by Defendant, which in turn is owned and operated by Ted and Cyndi Dorr. (ECF No. 23-1, Ted Dorr Aff. at ¶¶ 2 – 3.) Plaintiff began her employment at Double D's in March, 2010, as a delivery driver and shift runner. (ECF No. 23-2, Crist Dep. at 17:12 – 23.) She was promoted to assistant manager in the Fall of 2010 and was promoted to general manager of Defendant's Louisville, Colorado restaurant in December, 2010. (*Id*. at 18:4 – 23.) As manager, Plaintiff's duties included all operations of the restaurant, including supervising staff, making food and taking orders. (*Id.* at 19:15 – 22.) She generally worked around sixty-eight to seventy-two hours per week. (*Id.* at 19:23 – 25.) Ted Dorr described Plaintiff's performance up until July, 2011, in very positive terms, that Plaintiff "was very good at doing things," someone who could do "it all, or a lot of it by herself" and "was an awesome one-man team." (ECF No. 28-5, Ted Dorr Dep. at 49:1 – 4.) However, Plaintiff found the job to be stressful due to the long hours and from issues she would encounter dealing with customers. (ECF No. 23-2, Crist Dep. at 20:12 – 22.)

On July 26, 2011, Plaintiff informed Ted and Cyndi Dorr that she was pregnant with her second child. (*Id.* at 21:10 – 15.) Although the complete nature of Plaintiff's relationship with the Dorrs is disputed, it appears that the couple had babysat Plaintiff's daughter, her first child, on occasion and had also allowed Plaintiff and her daughter to live in their home for a period of time. (ECF No. 23-1, Ted. Dorr Aff. at ¶¶ 7 – 8.) Shortly after she became pregnant in 2011, Plaintiff began experiencing difficulties with her pregnancy in the form of morning sickness and migraines. (ECF No. 23-2, Crist Dep. at 13:14 – 15:2.) Plaintiff believed that these ailments were being

exacerbated by the stress she was experiencing in her job. (*Id.*; *see also* ECF No. 1, Compl. ¶ 18.)

On August 6, 2011, Plaintiff left the restaurant for about two hours during her shift, placing a "shift runner" in charge of the restaurant who was not trained or approved to act as a manager. (ECF No. 23-2, Crist Dep. at 26:8 – 28:1; ECF No. 28-1, Ted Dorr Aff. at ¶ 12, 14.) Shortly before she left the restaurant, Plaintiff sent a text message to Ted Dorr stating that she was having a very bad day and needed to take a couple hours away from the store. (ECF No. 28-1, Ted Dorr. Aff. at ¶ 13.)[1] Mr. Dorr set a meeting with Plaintiff for later that day when she returned to the restaurant. (*Id.* at ¶ 15.) However, Plaintiff again left the restaurant before the meeting occurred and left a note explaining that she was forced to leave due to "overwhelming stress." (ECF No. 23-6, Aug. 6, 2011 Letter.)

Plaintiff had a meeting with Ted and Cyndi Dorr the following day, August 7, 2011, to discuss her performance. (ECF No. 23-1, Ted Dorr Aff. at ¶ 16.) At that meeting, Plaintiff expressed that she was "stressed out" and "unhappy" at Double D's due to the long hours she was working. She also stated her belief that she was being micro-managed by both Ted and Cyndi Dorr. (*Id.* at ¶17.) At the meeting, the Dorrs gave Plaintiff an option to change her position to make it less stressful, which Plaintiff declined. (*Id.* at ¶ 18.)

---

[1] In support of its motion for summary judgment, Defendant submitted a transcript of certain text messages sent among Plaintiff, Ted Dorr and Cyndi Dorr. In ruling on Defendant's motion for summary judgment, the Court will *only* consider those text messages that have had their authenticity corroborated with supporting affidavits or testimony. *See United States v. Hunter*, 266 F. App'x 619, 621 (9th Cir. 2008) (text messages properly authenticated by the use of relevant testimony); *Sanders v. Mohtheshum*, No. 10-cv-02897, 2011 WL 6329866, at *3 n.2 (D. Colo. Dec. 19, 2011) (accepting text message as admissible for the purpose of establishing Plaintiff's claim that a material issue of fact existed as to "whether Plaintiff was suspended from her employment with Pizza Hut"); *In re E.D.T. v. Tayson*, No. 09-cv-5477, 2010 WL 2265308, at *3 n.4 (E.D.N.Y. May 28, 2010) ("testimony concerning the text messages was sufficient to establish their authenticity"); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 549 - 56 (D.Md. 2007) (recognizing Fed. R. Evid. 901 as providing for the use of circumstantial evidence in authenticating text messages).

Plaintiff had another meeting with Ted Dorr on August 12, 2011. (*Id.* at ¶ 19.) During the meeting Plaintiff described that she was having very bad morning sickness and also having trouble sleeping. (ECF No. 23-2, Crist Dep. at 32:10 – 15.) She also stated that the long days working as a manager were hurting her. (*Id.* at 32:16 – 21.) Mr. Dorr explained to Plaintiff that she was an important part of the Double D's team and they discussed reducing Plaintiff's hours and other ways to make her job less stressful. (*Id.* at 32:3 – 35:8; ECF No. 23-1, Ted Dorr Aff. at ¶¶ 22 – 23.) Following this meeting, the Dorrs became more concerned with Plaintiff's health and her ability to perform her job as manager. (ECF No. 23-1, Ted Dorr Aff. at ¶ 24.) Plaintiff complained to Cyndi Dorr on numerous occasions regarding the health problems she was experiencing as a result of her pregnancy and work-related stress. (ECF No. 23-3, Cyndi Dorr Aff. ¶16.) Plaintiff reported experiencing debilitating headaches and the nausea she was experiencing required her to temporarily leave her shift on numerous occasions so that she could vomit. (ECF No. 23-2, Crist Dep. at 14:22 – 15:2, 24:18 – 25:2.)

On August 18, 2011, Plaintiff again sought to leave the restaurant during her shift, texting Cyndi Dorr that she needed a break because her head was hurting. (ECF No. 23-3, Cyndi Dorr Aff. at ¶ 17.) Later that day, Cyndi Dorr met with Plaintiff and discussed reassigning Plaintiff to work as a shift runner instead of working as a manager. Although it is disputed as to whether this change in position was offered to Plaintiff as a choice or whether it was involuntary, it is not disputed that Plaintiff expressed that she would not be happy with that change. (*Id.* at ¶ 19; ECF No. 23-2, Crist Dep. at 48:25 – 51:9.) Defendant contends that, even as a shift runner, Plaintiff would have received the same hourly wage that she received while working as a manager, but that

6

this position would entail fewer hours and fewer responsibilities than what Plaintiff had as a manager. (ECF No. 23-1, Ted Dorr Aff. at ¶¶ 27 – 28.) Following that discussion, Cyndi Dorr made the schedule for the following week and did not include Plaintiff on the schedule, either as shift runner or as manager. (ECF No. 23-3, Cyndi Dorr Aff. at ¶¶ 23 – 24.)

The next day, August 19, 2011, Plaintiff went to the restaurant, dropped off her uniform and picked up her last pay check, although it is disputed as to why Plaintiff took this action. (ECF No. 23-2, Crist Dep. at 14:8 – 11; ECF No. 23-3, Cyndi Dorr Aff. at ¶ 25.) Plaintiff claims that she was sent a text message telling her to bring in whatever Double D's property she had in her possession, which Plaintiff interpreted to mean that her position had been terminated. (ECF No. 23-2, Crist Dep. at 14:7 – 21.) Defendant claims that Plaintiff was never told that her position was terminated. (ECF No. 23-1, Ted Dorr Aff. at ¶29; ECF No. 23-3, Cyndi Dorr Aff. at ¶ 26.)

### III. ANALYSIS

Although Plaintiff does not specifically cite to it, her claim would fall under the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), which "emanates from Title VII" and "among other things, makes it unlawful to discriminate against any individual with respect to terms, conditions, or privileges of employment based on the employee's sex." *EEOC v. Ackerman, Hood & McQueen*, 956 F.2d 944, 947 (10th Cir. 1992) (citation omitted). The PDA, incorporated into Title VII through an amendment to its defintional section, states that:

> [t]he terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall

>be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work. . . .

42 U.S.C. §2000e(k).  This language was added to Title VII to "prevent the differential treatment of women in all aspects of employment based on the condition of pregnancy."  *Ackerman*, 956 F.2d at 947 (quoting *Carney v. Martin Luther Home, Inc.*, 824 F.2d 643, 646 (8th Cir. 1987).  The Supreme Court has opined that "[t]he reports, debates, and hearings make abundantly clear that Congress intended the PDA to provide relief for working women and to end discrimination against pregnant workers."  *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 285-86 (1987).

The Tenth Circuit has determined that, under Title VII, a pregnancy discrimination claim is analyzed under the same "disparate treatment analysis" as with other Title VII claims.  *Ackerman,* 956 F.2d at 947.  As with other discrimination cases under Title VII, the Tenth Circuit follows the three stage analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252-56 (1981).  *Atchley v. Nordam Grp., Inc.*, 180 F.3d 1143, 1148 (10th Cir. 1999).  Following this template, the plaintiff has the initial burden of establishing a prima facie case of discrimination by showing that (1) she is the member of a protected class (in this case, that she is pregnant); (2) she satisfactorily performed the duties required of the position; (3) she suffered an adverse employment action; and (4) her position remained open and was ultimately filled by a nonpregnant employee.  *Dodd v. Riverside Health Sys., Inc.*, 76. F.3d 392, 1996 WL 29246, at *2 (10th Cir. Jan. 25, 1996); *McDonnell Douglas Corp.*, 411 U.S. at 802.  Plaintiff's burden at this stage is to

establish each factor by a "preponderance of the evidence," although the Supreme Court has acknowledged that this burden is "not onerous." *Texas Dept. of Cmty. Affairs*, 450 U.S. at 253.

Should the plaintiff sustain her burden of establishing a prima facie case, the burden of production then shifts to the defendant, who is then tasked with the burden of "articulat[ing] a legitimate, nondiscriminatory reason for its action . . . ." *Atchley*, 180 F.3d at 1148 (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 529 (10th Cir. 1994). Should the defendant articulate such a reason, "the burden of persuasion moves back to the plaintiff," and she is then required to show that her "pregnancy was a determinative factor in the defendant's employment decision, or show the defendant's explanation for its action was merely pretext." *Id.* at 1148-49. "Failure to come forward with evidence of pretext after the employer articulates a legitimate nondiscriminatory reason for its action will entitle the defendant to judgment." *Id.* at 1149.

### A. Prima Facie Discrimination Case

Defendant only disputes whether Plaintiff has established a material issue of fact as to the third prong of the prima facie discrimination case, arguing that Plaintiff was never demoted or fired. Defendant argues that Plaintiff was not demoted to shift runner on August 18, 2011 but was merely offered the position on a temporary basis, and at the same rate of pay, in order to accommodate the problems she was experiencing in connection with her pregnancy. In support, Defendant offers the affidavit of Cyndi Dorr. (ECF No. 23-3, Cyndi Dorr Aff. at ¶¶ 19 – 22.) Defendant further argues that Plaintiff was never terminated from her position, but voluntarily quit. Defendant contends that Cyndi Dorr made the schedule for the week following August 18, 2011 and did not include Plaintiff on the schedule because Plaintiff had not yet informed her of

whether she wanted to work as shift runner or as manager. Instead of making that selection, Defendant contends that Plaintiff returned her Double D's gear to Cyndi Dorr, picked up her last pay check and did not return to work. Defendant has submitted affidavits from both Ted and Cyndi Dorr affirming that neither of them ever told Plaintiff that her position had been terminated. (*Id.* at ¶ 26; ECF No. 23-1, Ted Dorr Aff. at ¶ 29.)

In response, Plaintiff points to several pieces of evidence indicating that she was demoted on August 18, 2011 and that her position was terminated the following day. Regarding her demotion, Plaintiff points to testimony from Ted Dorr before the Industrial Claims Appeals Office for the State of Colorado where he acknowledged that Plaintiff "was being demoted to a position that was less responsibility [sic] because she was finding it difficult to be reliable after the announcement of her pregnancy." (ECF No. 28-2, Dec. 8, 2011 Industrial Claim Appeals Office Transcript of Testimony at 11:1 - 4.) Plaintiff further points to testimony from Cyndi Dorr at that hearing acknowledging that she notified Plaintiff of her demotion via text message. (*Id.* at 67:21 – 23.) Plaintiff also submitted meeting notes created by Ted Dorr relating to his August 7, 2011 meeting with Plaintiff. (ECF No. 28-1, Aug. 7, 2011 Letter.) Those notes appear to inform Plaintiff that her "position may change" if she did not accomplish certain goals as a manager of the restaurant. (*Id.*) Regarding her termination, Plaintiff points to her own deposition testimony in which she states that she was notified to turn in her Double D's company gear in a text message sent by Cyndi Dorr. (ECF No. 23-2, Crist Dep. at 14:2 – 11.)

The Court finds that Plaintiff has submitted sufficient evidence establishing a material issue of fact as to whether she was demoted on August 18, 2011 and her position terminated on

August 19, 2011. As to Plaintiff's demotion, Defendant does not appear to dispute that the new position offered to Plaintiff entailed fewer responsibilities. While Defendant argues that the new position was offered merely as an accommodation to help Plaintiff cope with the problems she was experiencing with her pregnancy, this argument speaks only to *why* Defendant chose to demote Plaintiff and is not relevant to the issue of whether Plaintiff can establish that she was in fact demoted. Even if Plaintiff's pay would have remained the same in her new position as shift runner, Plaintiff's reduced hours and responsibilities would be sufficient to constitute an adverse employment action. *See E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1039 – 40 (noting that the Tenth Circuit has interpreted the scope of what would be considered an adverse employment action liberally and that "reassignment with significantly different responsibilities" is sufficient to establish that factor) (citations omitted).

As to Plaintiff's termination, the only evidence submitted by Plaintiff in support of this contention that she was fired is her own testimony, (ECF No. 23-2, Crist Dep. at 14:2 – 11), and the only evidence submitted by Defendant is contrary testimony from Todd Dorr and Cyndi Dorr. (ECF No. 23-1, Ted Dorr Aff. at ¶ 29; ECF No. 23-3, Cyndi Dorr Aff. at ¶ 26.) At this stage in the proceedings, where both parties have submitted opposing testimony as to a material fact, there clearly exists a material issue of fact as to whether Plaintiff's position of manager at Double D's was terminated by Defendant. *Anderson*, 477 U.S. at 251-52; *Stone*, 210 F.3d at 1136; *see also Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("Material factual disputes cannot be resolved at summary judgment based on conflicting affidavits."); *Seamons v. Snow*, 206 F.3d 1021, 1027 (10th Cir. 2000) (when presented with conflicting testimony, a district court cannot

make summary judgment rulings "without resolving factual disputes – something it cannot do at this stage of the proceedings"). Further, the fact that Cyndi Dorr created the next week's schedule without assigning Plaintiff any shifts would tend to corroborate Plaintiff's contention that she was fired. (ECF No. 23-3, Cyndi Dorr Aff. at ¶¶ 23, 24.)

The Court thus finds that Plaintiff has sustained her burden of establishing a prima facie case of discrimination.

### B. Pretext

Because Plaintiff has established a prima facie discrimination claim, the Court must analyze whether Defendant is able to show that it had a legitimate, non-discriminatory reason for its employment action and whether Plaintiff is able to show that Defendant's proffered reason is mere pretext. Here, Plaintiff is unable to show that Defendant's actions were not based on the significant issues she was having in the performance of her job.

As Defendant points out, there is evidence in the record showing that Plaintiff was unhappy with her job and had experienced significant stress from working long hours. (*See* ECF No. 23-6, Aug. 6, 2011 Letter; ECF No. 23-2, Crist Dep. at 20:12 – 22; ECF No. 23-1, Ted Dorr Aff. at ¶¶ 13, 17, 21, 25, 26; ECF No. 23-3, Cyndi Dorr Aff. at ¶¶ 13, 16, 19.) Defendant further points out that Plaintiff had abandoned her shift as manager on at least one occasion due to stress, leaving an unqualified employee in charge to manage the restaurant, and that Ted and Cyndi Dorr had significant concerns that this incident would be repeated. (ECF No. 23-2, Crist Dep. at 26:8 – 28:14; ECF No. 28-1, Ted Dorr Dep. at ¶ 12, 14.) Indeed, Plaintiff admitted that she was under significant stress from her position as manager at Double D's, especially as she developed

complications from her pregnancy, yet did not offer any evidence showing that the stress she was experiencing would have been alleviated if she had been kept on in her position as manager. Defendant would thus be able to sustain its burden of offering a legitimate, nondiscriminatory reason for any employment action that was taken against Plaintiff: that Plaintiff had shown a marked decline in the performance of her duties as manager of the restaurant due to stress and had even left the restaurant without adequate supervision on one occasion. *Atchley*, 180 F.3d at 1148. Plaintiff, in turn, is required to show that the reason offered by Defendant is mere pretext. *Id.* at 1148-49.

While not explicitly put forward to establish pretext, Plaintiff does argue that there was a significant shift in Ted and Cyndi Dorr's treatment towards her immediately following the announcement of her pregnancy and that this temporal connection shows that the catalyst for Plaintiff's demotion and eventual termination was her pregnancy. Plaintiff points to evidence of Ted Dorr's opinion that, prior to becoming pregnant, Plaintiff ran her store "like a charm" and was "an awesome one-man team." (ECF No. 28-5, Ted Dorr Dep. at 48:22 – 49:4.) Plaintiff also points to the several promotions she was given prior to her pregnancy. (ECF No. 23-2, Crist Dep. at 18:4 – 23.) In contrast, over the course of four weeks following the announcement of her pregnancy, several meetings were held with Plaintiff regarding her performance issues. (ECF No. 28-1, Ted Dorr. Aff. at ¶ 15, 16, 19.) Plaintiff was then demoted and ultimately fired.

However, Plaintiff's argument ignores the fact that, immediately following the announcement of her pregnancy, Plaintiff had shown a marked decline in the performance of her job duties. As described above, Defendant's proffered reason for demoting and eventually firing

Plaintiff was that she had abandoned the restaurant on one occasion, leaving an unqualified subordinate in charge, and had made various statements and taken various actions indicating that the stress she was experiencing from her job was causing her to become highly unreliable. Although there is admittedly a temporal correlation between Plaintiff's announcement of her pregnancy and the adverse employment actions taken against her, Plaintiff has not presented any evidence tending to show that there is also a causal connection between her pregnancy and her demotion and eventual termination. Instead, it appears from the evidence in the record that the primary causal factor behind Defendant's employment action was the clear job performance deficiencies that occurred in the same time frame as Plaintiff's pregnancy. Although it seems as if Plaintiff's stress was at least on some level related to her pregnancy, at the end it is far from pretext to say that a manager's abandonment of her post to an underling is legitimate grounds to terminate her employment.

Plaintiff's brief argues not the above on the issue of pretext, but only that Defendant had a policy of treating underperforming employees very poorly to encourage them to quit, as opposed to firing them, so that they could avoid paying unemployment benefits. (ECF No. 28 at 20; ECF No. 28-8, Crist Decl. at ¶¶ 4 – 5.) Plaintiff specifically cites to one instance in which Cyndi Dorr instructed Plaintiff to make a particular employee's "life a living hell" in order to force that employee to quit. (*Id*.) However, Plaintiff's argument that Defendant engaged in actions designed to encourage underperforming employees to quit would have no bearing on whether Defendant chose to demote or terminate Plaintiff's employment or the reasons Defendant had for taking any such employment action against her. Rather, the most that Plaintiff's argument could

show is that Defendant sought to have Plaintiff quit, as opposed to affirmatively firing her, in order to avoid having to pay unemployment benefits. But this does nothing to show what Defendant's reason was for deciding to terminate Plaintiff's employment in the first instance. Plaintiff is therefore unable to meet her burden of showing that the reason offered by Defendant to explain its employment action was mere pretext.[2]

## IV. CONCLUSION

Based on the foregoing, it is ORDERED that Defendant's Motion for Summary Judgment (ECF No. 23) is GRANTED. The Clerk of the Court is directed to enter JUDGMENT in Defendant's favor.

DATED this 30th day of July, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

---

[2] Defendant further argues that Plaintiff is unable to establish pretext because she has not presented any evidence showing that she was treated differently from other employees. It is true that "[a] plaintiff may show pretext 'by providing evidence that he was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness.'" *Shaw v. Tulsa Dynaspan Arrow Concrete*, 408 Fed. App'x 177, 181 (10th Cir. 2011). However, this is not the sole means by which a plaintiff may show that the employer's proffered reason for her termination was a pretext for discrimination. Instead, a plaintiff may establish pretext by any means of proof competent to show that the reason the plaintiff was fired was other than that offered by her employer. *Texas Dept. of Cmty. Affairs*, 450 U.S. at 253. "It is firmly established that this evidence may 'take a variety of forms.'" *Luna v. City & Cnty. of Denver*, 948 F.2d 1144, 1148 (10th Cir. 1991) (quoting *Furnco Constr. Co. v. Waters*, 438 U.S. 567, 578 (1978).